In the district court for the united States District of Maine (Bangor) in its Article III Common Law capacity Frankie, Inman-Arbo ex. rel., Proper Party Plaintiff, vs. Christopher Almy

Writ of Habeas Corpus

A Common Law Action brought under Article III of the Constitution for the united States Trial by Jury Pursuant to the 7th Article of the Bill of Rights Endorsed Hereon

Pursuant to: M.R.S.A. Const. Article 1, § 19. Right of redress for injuries Every person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay. Therefore this must be acted upon without delay and/or denial.

Pursuant to the 8th and 14th Amendments, Cruel and unusual punishment shall not be inflicted.

Pursuant to the 6th Amendment the right to effective assistance of counsel

The Right to Due Process which can be found under both the United States and State of Maine Constitutions, statutes of both the United States and the State of Maine, and different Acts.

SUMMARY

In accordance with 18 U.S.C. § 3161. Time limits and exclusions. An indictment must be made within 30 days, it shall not be over 12 months. On CR-20-2416 it took over 16 months for an indictment to be made, on CR-20-2507 it took over 15 months, and on CR-20-30387 it took nearly 17 months; these all were clearly in violation of the above Statute. [See: United States v. Hansel, 70 F.3d 6 (CA 2 1995) Hansel's counsel's failure to object to the time-barred counts is unaccountable in the circumstances, and cannot "be considered sound trial strategy. In particular, counsel's decision cannot be justified by considerations related to the negotiations of a plea agreement, [Hansel's prejudice is he pleaded guilty to two time-barred counts that would have been dismissed, if his attorney had acted compentently. [Convictions reversed on counts seven and eight.]] Plaintiff (Inman-Arbo) was forced to plead out due to ineffective assistance of counsel, a plea deal never would have taken place if a proper defense was given as the time-barred charges would have been dismissed.

Attorney Handelman mislead plaintiff with false information claiming his past criminal convictions would be used against him if they went to trial and be provided to the jury so plaintiff would get the maximum amount of time on every charge. [See: Blackburn v. Foltz, F.2d 1177 (CA 6 1987) Blackburn... asserts that the failure of his counsel, Mr. Girard, to move for suppression of his three prior convictions deprived him of effective assistance of counsel. [Told by counsel that his prior convictions could be used to impeach his testimony.] Mr. Girard's recitation of the law regarding admissibility of prior convictions was clearly wrong... and cannot be said to constitute reasonable strategy.] Mr. Inman-Arbo's criminal record was forced upon the sentencing judge. [See: Townsend v. Burke, 334 U.S. 736, court ruled that the 5th Amendment Due Process Clause prohibited a sentenced based upon false assumptions concerning criminal record.]

On CR-20-2507 plaintiff was never given notice of criminal charges. [See: Henderson v. Morgan, 426 U.S. 645, 59 L.Ed 2d 108, 96 S.Ct. 2253 (1976) Here

Here the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received "real notice of the true nature of the charges against him, the first and most universally recognized requirement of due process." Smith v. O'Grady, 312 U.S. 329, 85 L.Ed 859, 61 S.Ct. 572.]

Many times including the day of sentencing (6/27/2023) defense counsel used abussive/degrading language directed at plaintiff. [See: Frazer v. U.S., 18 F.3d 778 (CA 9 1994) On advice of counsel, Mr. Frazer waived his right to a trial by jury, and the case was tried to the court on stipulated facts. He was convicted of 8 counts and sentenced to a twenty-year(s).]

Plaintiff was subjected to 15 months of pretrial detention. According to: 15 M.R.S. § 1702 no punishment until conviction. [See: Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed 3, 1951 U.S. "Traditional right to bail before conviction permits unhampered preparation of defense, and serves to prevent infliction of punishment prior to conviction, unless this right is preserved presumption of innocence would lose its meaning; practice of requiring bail bond or deposit of sum of money subject to forfeiture serves as additional assurance of presence of accused and bail set at higher figure than amount reasonanably calculated to fulfill this purpose is excessive under 8th Amendment."] [See: United States v. Frisone, 795 F.2d 1, 1986 U.S. App. continued detention of defendant for nearly 12 months pursuant to 18 U.S.C.A. § 3141, for reason that defendant had not rebutted presumption drawn from fact that he had been involved in at least 3 crimes of violence, that he was type of person that no condition or combination of conditions would reasonably assure safety of community, violated defendant's due process rights since he was not subjected to punishment without adjudication of guilt.

As a pretrial detainee plaintiff was subjected to an extradition which consited of 15 days with about 12,000 miles in handcuffs and shacles, two showers, and no clean clothes. [See: Sterns v. Inmate Corp., 957 F.3d 902, 2020 U.S. App. (8th Cir. 2020) An inmate Service company was not entitled to summary judgement in a pretrial detainee's 42 U.S.C.S. § 1983 action, claiming that the company violated his right to be free from punishment when, instead of a 17-hour extradition trip, it transported him shackled and unable to lie down, for eight continuace days accross twelve States, with only momentary breaks for bathroom use, because it was well within the company's practice to pick up and drop off prisoners on multi-state journeys such as this on, and a jury could reasonably view the extension as causing conditions that were arbitrary or excessive in comparison to the presumed goal of securly transporting the detainee from Colorado to Mississippi in violation of the U.S. Const. Amend. XIV.] Before plaintiff was extradited from California, the jail that he was housed at offered to do video court appearances so he wouldn't have to be subjected to such punishment but the vindictive prosecutor refused.

On CR-20-2507 plaintiff was excessively charged out of vindictivness of the prosecutor, the owners of the property claimed they hadn't lived at the property in at least 7 years and only used it for storage. [See: Maine v. Albert (1981) ME, 426 A.2d 1370. "Places that were once Dwelling places that have been abandoned and left uninhabitable by the owners are no longer dwelling places."] With effective counsel this clearly would have be acted upon.

[See: MCcoy v. Louisiana 138 S.Ct. 1500 (2018) "The 6th Amendment guarantees a defendant the right to choose the objections of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experience-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. (a) The 6th Amendment guarantees to each criminal defendant the Assistance of counsel for his defence. The defendant does not surrender control entirely to counsel for the 6th Amendment, in granting to the accused personally the right to make his defensem speaks of the assistance of counsel, and an assistant, however expert, is still an assistant. Faretta v. California, 442 U.S. 806, 819-820. The Lawyer's province is trial managment,

but, some decisions reserved for the client include to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal.] Plaintiff filed a motion to supress that the defense counsel refused to act on, plaintiffs demanded motions to dismiss, change of venue, and more yet counsel took upon himself to not act properly upon.

Plaintiffs medical records were never obtained despite several demands to do so and waivers for release being signed to obtain such records. [See: Richards v. Quarterman, 566 F.3d 533 (CA 5 2009) The district court concluded that attorney Davis was ineffective for not submitting Richards Veterans Administration medical records into evidence. In light of the absence of any credible explanation for this failure, we agree with district court that the State's conclusion to the contrary was an unreasonable application of Strickland, and that its contrary factual findings were rebutted by clear and convincing evidence.]

Counsel refused to obtain plaintiffs mental health records despite being asked to do so, plaintiff demanded comepetency evaluations but attorney refused to do so because he felt as though plaintiff was competent. [See: Antwine v. Delo, 54 F.3d 1357 (CA 8 1995) P. 1365. Antwine argues first that his trial counsel was ineffective in failing to investigate fully and present evidence of his menatl condition of the time of the murder. P. 1367 Counsel's failure to request a second mental examination is more like inadquate trial preparation than a strategic choice. [Holding the sentencing portion unconstitutional under the Sixth Amendment.] [See: Dusky v. United States, 362 U.S. 402, 4 L. Ed 2d 824, 80 S.Ct. 788 (1960) We agree with the suggestion of the Solicitor General that it is not enough for the district judge to find that "the defendant [is] oriented to time and place and has some recollection of events," but that the test [for competency to stand trial] must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding of the proceedings against him."] [See: Becton v. Barnett, 920 F.2d 1190 (CA 3 1990) Counsel may not have to believed that Becton was incompetent. However, a lawyer is not entitled to rely on his own belief about a defendant's mental condition, but instead must make a reasonable investigation. Wood v. Zahradnick, 578 F.2d at 982. In this case at bar, Becton alleges that he told counsel that he had been in and out of mental hospitals before arrest. The facts which Becton's counsel knew or could have acertained with reasonable diligence provided reasonable grounds for him to have questioned grounds for him to have questioned Becton's competency as the only possible "ray of promise."]

On CR-20-2507 count/charge 3, plaintiff was never sentenced.

Every court hearing defendant made out plaintiffs right to travel to be a crime. [See: Miller v. U.S. 230 F.2d 486, 489. "The claim and exercise of a constitutional right cannot be converted into a crime."]

The court lacked jurisdiction to proceed against plaintiff. [See: Warning v. Mayor of Savannah, 60 GA at 93. "People are Supreme, not the State."] [See: Perry v. U.S., 294 U.S. 330, 353 (1935) "The congress cannot revoke the Sovereign power of the people to override their will as declared."] [See: Nestor v. Hershey, 425 F.2d 504. The high courts have decreed, that want of Jurisdiction make "all acts of Judges, magistrates, U.S. Marshalls, Sheriffs, local police, all void and not just voidable."] [See: U.S. v. United Mine Workers of America, (1947) 67 S.Ct. 677, 686, 330 U.S. 258. But, infact and in law, such statutes are intended to be applied to those who are here as "residents" in this State under the Interstate Commerce Claus of the Federal constitution and the so-called 14th Amendment.] [See: Pollard v. Hagan 3 H. 212. "When the [American] Revolution took place, the people of each State became themselves Sovereign."] [See: Bond v. U.S., 529 U.S. 334-2000, The Supreme court held that the "American People are in fact Sovereign and not the States or the government. The court went on to define that local, State, and Federal law enforcment officers were committing unlawful actions against the Sovereign People by the enforcment of the laws and are personally liable for their actions.]

[See: FRC v. GE 281 U.S. 464, Keller v. PE 261 U.S. 428, 1 Stat. 138-178). "There are no judicial courts in America and there hasn't sonce 1789. Judges don't enforce Statutes and Codes. Executive Administrators enforce Statutes and Codes."] [See: James Madison Journel of the Federal Convention, Volume 2, page 722. You'll find that the United States is a corporation.]

   On CR-20-2416 the property had a tax lien against it, plaintiff was trying to take owership on the unpaid taxes, as it was during COVID meeting anyone in person wasn't an option, therefore, everything was figured out via calls. As plaintiff wanted the property for himself he started cleaning up the significantly neglected property which included but not limited to black mold removal, several truck loads of several year old moldy trash, broken water lines, a collapsed roof, etc. Only when the owners found out plaintiff was trying to get the property did they care, they traveled from out of state, paid the taxes shortly after, pressed charges, left and never returned, than sold the property about 3 months later. The owner lied to the police claiming there was never a tax lien, both Trooper Kurth and plaintiff looked the lien up on the Penobscot County Registree of Deeds website, Trooper Kurth added several screenshots that the lien did exist at the time, these screenshots were sent with her report to the DA's Office. Trooper Kurth stated to plaintiff she didn't think it was a burglary, yet out of vindictive prosecution and ineffective counsel plaintiff is serving a 5 year sentence on a Burglary that in fact never happed.

   On CR-20-2507 co-defendant/es girlfriend Alexis Jones provided plaintiff with adocument she claimed was signed by the owner giving permission for her and plaintiff to clean up the property, this document was provided to plaintiff with a witness present, that witness wrote a statement about this which attorney Handelman refused to acknowledge and use for a defense. Plaintiff made it known many times that Ms. Jones was abusive physically, mentally, and sexually yet none of this was ever looked into. [See: State v. Case, 672 A.2d 586, ME 1996. Evidence that defendant assisted her boyfriend with a burglary, robbery, and kidnapping because of her abnormal fear that he would abandon her, but that did not show that she feared "imminent death or bodily injury" to herself or another if she did not assist him was not sufficient to show duress within the meaning.] Many times Ms. Jones tried to kill plaintiff, she'd often threaten to put his terminally ill father in an early grave, she stabed plaintiff, she also had 4 guy's brutally beat plaintiff with weapons than leave him for dead.

   On CR-20-30387 Ms. Jones addmitted to stealing the dealer plate not the plaintiff, he was wrongfully charged and convicted of this knowing it didn't happen.

   On 6/27/2023 plaintiff, attorney Handelman, and defendant Almy violated th the following: 18 U.S.C.S. § 1621 (2) in any declaration, certification, verification, or statement under penalty of perjury, willfully subscribes as true any material matter which he does not believe to be true. 18 U.S.C.S. § 1503 Influencing or injuring officer or juror. (a) whoever corrptly influences a judge. 18 U.S.C.S. § 1625 False declarations before grand jury or court. (a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration. Its clear that any such jedgment that was made by the court under these clear violations has resulted in a frudently imposed judgment that is null and void. All parties knew there wasn't enough evidence for the state to make a counviction at trial, that the plaintiff was thratend that if he went to trial they would give him the max on every charge and push for them to be consecutive, that plaintiff have Huntington's disease as well as PTSD and other mental health issues could have clearly kept plaintiff from making such a plea competently.

   See: Federal Rule 52 Harmless and plain error that effects substantial rights may be considered even though it was not brought to the courts attention.

<in the hands of attorneys. [See: Schware vs Board of Examiners, 353 U.S. 238, 239. "The pratice of law cannot be licensed by any state/State."] [See: Sims v. Aherns S.W.720 (1925) "The practice of law is an occupation of common right."] There's no attorney within the United States that's "licensed" to practice law, therefore, any such claims to be licensed is fraud, every case they represent someone on and there's a judgement made all said judgements are Null and Void as they were fraudently claiming to be "licensed" attorneys, prosecutors, etc. [See: State v. Sutton, 63 minn. 147, 65 NW 262, 30 L.R.A. 630 Am. 459. When any court violates the clean and unambiguous language of the Constitution, a fraud is perpetrated and no one is bound to obey it."] [See: Olmstead v. U.S. 277 U.S. 438, 48 S.Ct. 564, 575; 72 L.Ed 944 (1928) Justice Bandeis eloquently affirmed his condemnation of abuses practiced by government officials, who were defendants, acting as government officials. he declared: "Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizens. In a government of laws, existence of the government will be impariled if it fails to observe the law serupulously. Our government is the potent, omni present teacher. For good or for ill, it teaches the whole people by its example crime is contagious. If the government becomes a lawbreaker, it breads contempt for law; it invites every man to become a law unto himself.]

## Relief

1. Plaintiff be released on post-trial bail to be with his fiance, kids's, terminally ill father, and be able to get the proper specialized care he needs for his terminal illness that he's been deprived of since he arrived in MDOC custody. It'll also ensure that he has proper access to legal matterial and evidence that's needed for this case, MSP doesn't have a law library, they don't allow him to have access to a computer, and he's in fear for his life due to the significant unlawful/unconstitutional actions in the hands of Chadwick Curtis (Director of Classifications).

2. Plaintiffs convictions be withdrawn.

3. The indictments to be struck down as they were in fact fraudent.

I, Frankie Michael Inman-Arbo, hereby declare the foregoing to be true, correct, and not misleading to be best of my knowledge.
This is being signed on this 7th day of March, 2025, in good faith under the penalties of perjury.

Frankie Michael Inman-Arbo
without prejudice